# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| RHONDA RAE McDONALD,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>  Acting Commissioner of Social Security,<br><br>    Defendant. | No. 16-CV-03111-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

## *I.* *INTRODUCTION*

The plaintiff, Rhonda Rae McDonald (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 1381-1385 (Act). For the reasons that follow, the Court affirms the Commissioner's decision.

## *II.* *BACKGROUND*

For this background, the Court relied on the administrative record (AR) and the Joint Stipulation of Facts (Doc. 17). Claimant was born in 1954, and she was 58 years old at the time of the alleged onset of disability. (Doc. 17, at 1; AR 16).[1] Claimant had

---

[1] There is a discrepancy in claimant's alleged age, with the ALJ stating that claimant was 58 years old at the time of the alleged onset of disability, but the parties stipulating that she was 59

a high school education and past relevant work as a medical records clerk. (Doc. 17, at 1; AR 16).

On September 3, 2013, claimant filed her application with an alleged onset date of June 4, 2013. (AR 8, 136-37). In 2014, the Commissioner denied claimant's application on initial consideration and again upon reconsideration. (AR 8, 82-85, 88-91). Following a hearing, on November 25, 2015, Administrative Law Judge (ALJ) Henry Hamilton found claimant was not disabled. (AR 8-18). On October 7, 2016, the Appeals Council denied review. (AR 1-3). The ALJ's decision thus became the final decision of the Commissioner. *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On October 28, 2016, claimant filed a complaint in this Court seeking review of the Commissioner's decision. (Doc. 5). On November 17, 2016, with the consent of the parties, the Honorable Leonard T. Strand, Chief United States District Court Judge, transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. (Doc. 9). Claimant filed her brief on May 9, 2017 (Doc. 18), and on June 7, 2017, the Commissioner filed her brief (Doc. 19). On June 21, 2017, this case was deemed fully briefed and ready for decision. (Doc. 20).

### III. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An

---

years old at the time. The Court finds the discrepancy immaterial because in either event claimant was defined as an individual of advanced age.

individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple

3

instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 416.921.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there

is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If, after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. (*Id.*). If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability, and the claimant is not disabled.

## IV. THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since June 4, 2013. (AR 10).

At Step Two, the ALJ found that claimant had the following severe impairments: major depressive disorder, recurrent; generalized anxiety disorder; chronic anxiety

associated with major depressive disorder. (*Id.*). The ALJ considered claimant's hypothyroidism, but found that it was not a severe impairment. (*Id.*).

At Step Three, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 11).

At Step Four, the ALJ found that claimant had:

> the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); simple work-related decisions; occasional interaction with supervisors and coworkers but no tandem work with coworkers; no interaction with the public; and time off tasks can be accommodated by normal work breaks.

(AR 11-12). Still at Step Four, the ALJ also determined that claimant could not perform past relevant work. (AR 16).

Finally, at Step Five, the ALJ concluded that given claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. (AR 16-17). Relying on the testimony of a vocational expert, the ALJ found claimant could perform the following jobs: laundry worker, detailer, and kitchen helper. (AR 17).

Therefore, the ALJ found claimant was not disabled. (AR 18).

## V. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . ..").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645.  The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989).  The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).  Instead, if, after reviewing the evidence, the court finds it "possible to

draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (citation omitted)).

## *VI. DISCUSSION*

Claimant alleges that the ALJ erred in determining claimant's residual functional capacity. (Doc. 18, at 2-9). Although claimant does not break down her argument into subparts, in her brief she alleges the ALJ erred in (1) not giving sufficient weight to the opinion of Dr. Rogers (Doc. 18, at 4-5), and (2) finding claimant less than fully credible (Doc. 18, at 4-9).

In arriving at his assessment of claimant's residual functional capacity, the ALJ considered claimant's treatment records, her testimony, and the opinions of state agency consulting physicians. (AR 12-16). The ALJ considered medical records relating claimant's mental health treatment dating back to 2002. (AR 12). The ALJ noted that claimant had a history of sometimes not being compliant with taking medications and following treatment recommendations. (AR 12-14). The ALJ found it significant that when claimant was noncompliant, her symptoms became exacerbated. (*Id.*). The ALJ noted that by late 2014

8

and into 2015, claimant had become compliant with her medications and was doing well, denied significant side effects from her medication, and indicated that she was visiting her grandchildren and eating out more. (AR 14).

The ALJ summarized the findings by consultative psychologist Dr. Dan Rogers, Ph.D., in some detail. (AR 13). Dr. Rogers saw claimant on one occasion in November 2013, for the purpose of examining her in relation to her disability claim. Dr. Rogers found claimant to have negative and pessimistic thoughts, but otherwise exhibited a normal thought process. (AR 309-10). Dr. Rogers found claimant's insight was fair and her judgment good. (AR 310). Dr. Rogers recorded claimant's mood as "quite depressed and anxious" and noted that claimant described "serious vegetative signs, such as social avoidance and withdrawal, anhedonia, negative self-talk, morbid pessimism, poor care of her home, and little interest in food or reading." (*Id.*). Dr. Rogers concluded that based on his "observations and the history given by [claimant]," she was experiencing severe, chronic major depression. (*Id.*). Dr. Rogers concluded that claimant was "immobilized by the depression and she is not able to get along with other people because of it." (*Id.*). Nevertheless, Dr. Rogers noted that claimant is able to understand instructions, procedures, and locations, although her "pace is likely to be very poor and concentration and attention will wane frequently." (*Id.*). Dr. Rogers opined that claimant "is not able to interact appropriately with supervisors, coworkers, or the public" and "not able to adjust appropriately to changes in the work place." (*Id.*). The ALJ afforded Dr. Rogers' opinion "some weight." (AR 16).

The ALJ's residual functional capacity assessment reflected in large part the limitations identified by Dr. Rogers. The ALJ addressed Dr. Rogers' concerns about claimant's ability to concentrate, pay attention, and work at a fast pace by limiting claimant to "simple, routine and repetitive tasks but not at a production rate pace." (AR 11). The ALJ addressed Dr.

Rogers' concern about claimant's interaction with supervisors, coworkers, and the public by limiting her to only "occasional interaction with supervisors and coworkers but no tandem work with coworkers" and "no interaction with the public." (AR 11-12).

The ALJ found that claimant was "not entirely credible" with respect to the "intensity, persistence and limiting effects" of her reported symptoms. (AR 15). The ALJ summarized in detail claimant's subjective descriptions of her symptoms and limitations, which included anxiety attacks, stomach sickness, difficulty breathing daily, and significant fatigue as a result of medications. (*Id.*). The ALJ noted that treatment records failed to reflect anxiety attacks or the adverse side effects of her medication. (*Id.*). Rather, the ALJ noted that the medical records reflected that when claimant was compliant with her medications her symptoms decreased in severity, resulting in a "generally positive response and stability" in her symptoms. (*Id.*). Based on the Court's own review of the medical records, the Court finds there is support for the ALJ's conclusion that the medical records are inconsistent with claimant's subjective complaints about disabling anxiety attacks and adverse side effects from her medications.

### A. *The Weight the ALJ Afforded to Medical Opinions*

Generally, it is for an ALJ to determine the weight to be afforded to the opinions of medical professionals, and "to resolve disagreements among physicians." *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (internal citation and quotation marks omitted). An ALJ may give the opinions from non-treating, non-examining sources more weight than an examining or treating source's medical opinion when they are also supported by "better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal citation omitted). As noted, the Court found support in the medical

records for the ALJ's conclusion that claimant's subjective complaints were inconsistent with the medical records. *See Samons v. Astrue*, 497 F.3d 813, 819 (8th Cir. 2007) (ALJ entitled to discount the opinion of a treating physician when that opinion is conclusory or inconsistent with the evidence of record).

Dr. Rogers also explicitly relied on claimant's subjective description of her symptoms and limitations in reaching his opinions, without the benefit of reviewing claimant's medical records to see if those subjective descriptions were consistent with the medical records. Therefore, the inconsistency between claimant's subjective complaints and the medical records also supported the ALJ's decision not to afford Dr. Rogers' opinion more than some weight. *See, e.g.*, *Renstrom v. Astrue*, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (ALJ properly gave treating physician's opinion noncontrolling weight when that opinion was largely based on claimant's subjective complaints); *Kirby*, 500 F.3d at 709 (ALJ entitled to discount treating physician's statements regarding claimant's limitations because such conclusion was based primarily on claimant's subjective complaints and not medical evidence).

Moreover, in contrast to Dr. Rogers, the state consulting physicians had the benefit of reviewing all of claimant's medical records. An ALJ may consider state agency physicians' opinions and may rely upon them in making findings. *See* 20 C.F.R. § 416.927(e); *see also Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (holding that "[i]t is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment") (internal citation and quotation marks omitted). *See also Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) (having determined the treating physician's opinion was inconsistent with substantial evidence in the record, the ALJ is clearly authorized to

consider the opinions of other physicians); *Heino v. Astrue*, 578 F.3d 873, 880 (8th Cir. 2009) (ALJ can properly credit other medical evaluations in the record over that of the treating physician where those assessments are supported by evidence within the record). When assessments of state agency medical consultants are consistent with other medical evidence in the record, these assessments can provide substantial evidence supporting the ALJ's RFC assessment. *See Stormo*, 377 F.3d at 807-08.

Further, the Court finds that the ALJ's residual functional capacity assessment included the substantial work-related limitations identified by Dr. Rogers in any event. *See Choate v. Barnhart*, 457 F.3d 865, 869-70 (8th Cir. 2006) (limitations imposed by ALJ as reflected in claimant's RFC demonstrated that ALJ gave some credit to treating physicians' opinions); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

It is the ALJ's duty to weigh the medical evidence. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (quoting *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995)). Here, the ALJ weighed the evidence and resolved inconsistencies between the opinions of Dr. Rogers and the state agency psychological consultants, and the medical record as a whole. It is not for this Court to reweigh the same evidence; rather, it is for this Court to determine if there was substantial evidence in the record as a whole to support the ALJ's conclusions. *See Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999) ("We may not reverse the Commissioner's decision merely because substantial

evidence exists in the record that would have supported a contrary outcome.") (internal citation omitted). The Court finds that substantial evidence in the record as a whole does support the weight the ALJ afforded the opinions of Dr. Rogers and the consulting state physicians.

### B. The ALJ's Assessment of Claimant's Credibility

Claimant argues the ALJ erred in discounting claimant's credibility. (Doc. 18). In evaluating a claimant's credibility, an ALJ must consider the entire record including the medical records, statements by claimant and third parties, and factors such as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In arriving at a credibility determination, an ALJ is not required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Brown v. Astrue*, 4:08-CV-483 CAS, 2009 WL 88049, at *8 (E.D. Mo. Jan. 12, 2009) (quoting *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004)). The ALJ must "specifically demonstrate in his decision that he considered all of the evidence." (*Id.* (citing *Masterson*, 363 F.3d at 738; *Cline v. Sullivan*, 939 F.2d at 565)). In the end, however, "[t]he determination of a claimant's credibility is for the Commissioner, and not the Court, to make." (*Id.* (citing

13

*Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001))).

As previously noted, the Court finds there is substantial evidence in the record as a whole to support the ALJ's conclusion that claimant's subjective complaints about disabling anxiety attacks and medicinal side effects were inconsistent with the medical records, thereby detracting from claimant's credibility. The ALJ also acted within his zone of choice in viewing claimant's daily activities as inconsistent with her claimed limitations. Claimant asserts that her mental impairments prevented her from having social contact and engaging in conduct that requires attention and concentration. Yet, claimant performed household chores, such as cleaning house, doing laundry, and washing dishes (AR 178), spent time talking on the phone (AR 180), visited her grandchildren and ate out (AR 14), and attended medical appointments and went shopping alone (AR 33-34). Although the Eighth Circuit Court of Appeals decisions provide "mixed signals" regarding how ALJs are to consider a claimant's daily activities in making credibility determinations, the case law still provides that ALJs may consider daily activities in assessing a claimant's credibility. *See Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (permitting an ALJ to discount a fibromyalgia plaintiff's credibility in part based upon the claimant's daily activities, including the ability to cook, clean, drive, shop, and take care of personal grooming and hygiene). The ALJ also properly determined that claimant's noncompliance with taking medication, attending appointments, and following through with treatment recommendations detracted from her credibility. *See Choate*, 457 F.3d at 872 (holding that an ALJ may properly consider a claimant's failure to take prescribed medication in assessing credibility).

As a general matter, "[c]redibility determinations are the province of the ALJ, and as long as 'good reasons and substantial evidence' support the ALJ's evaluation of credibility," the Court will defer to the ALJ's decision. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). Furthermore, an ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" (*Id.* at 1086 (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006))). In short, the ALJ conducted a proper analysis of claimant's subjective complaints; it is not this Court's position to re-evaluate and re-weigh the same evidence. The ALJ was in a better position than the court to assess claimant's credibility, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), and was not required to accept her subjective complaints. Here, the Court finds the ALJ reasonably assessed claimant's credibility and the evidence on the record as a whole.

## VII. CONCLUSION

After a thorough review of the entire record, the Court concludes that substantial evidence in the record as a whole supports the ALJ's decision to find claimant was not disabled. Accordingly, the Court **affirms** the decision of the ALJ. Judgment shall be entered in favor of the Commissioner and against claimant.

**IT IS SO ORDERED** this 7th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa